## WILLIAM WOMACK v. THE STATE.

1. CRIMINAL LAW. *Breaking into business house. Indictment.* Under the act of 1871, ch. 39, making it a penitentiary offense to break into a business house with intent to commit a felony, an indictment charging the defendant with feloniously breaking into the business house of certain persons named, with intent to feloniously take, steal and carry away the goods and chattels of such persons then and there to be had and found in said business house, is good.

2. SAME. *Continuance. Discretion of courts.* The supreme court will not interfere with the discretionary action of the trial court in the matter of continuances, except in a clear case of the abuse of the discretion; and if a continuance be refused upon an affidavit alleging sufficient grounds, but upon the trial it appears that the affidavit was false, this court will not reverse.

3. SAME. *Same. When a case stands for trial.* Every prosecution stands for trial at the term at which the indictment is found, and if the defendant continues the case to the next term, he should take the proper steps to be then ready for trial.

### FROM WARREN.

Appeal in error from the Circuit Court of Warren county. J. J. WILLIAMS, J.

WMAOCK & MURRAY for Womack.

ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

Womack has appealed in error from a judgment of conviction of the offense of breaking into a business house with intent to commit larceny.

The first point made in his behalf is, that the indictment is insufficient. The charge is, that the defendant did "feloniously break open and enter into the business house of J. H. Towles & Brother, with the intent to feloniously take, steal and carry away the goods and chattels of the said J. H. Towles &· Brother, then and there to be had and found in said business house." The statute makes it a felony "to break and enter into the business house, outhouse, or any other house of another other than a mansion house, with intent to commit a felony": Act 1871, ch. 39. The objection to the indictment is, that the description of the offense intended to be committed is too general, citing *The State* v. *Williamson*, 3 Heis., 483, and *Purdue* v. *State*, 4 Baxt., 10.

In the first of these cases, the indictment was for housebreaking "with intent to commit a felony," without specifying the felony, and was held bad. In the second case, the charge was that defendant broke into a storehouse for the purpose of committing a larceny, and then and there, unlawfully and feloniously, did take, steal and carry away, etc., and the court held that the charge of the commission of larceny, the offense being described in apt words, was equivalent to a charge of the intent to commit that felony. It was said, however, that the words "for the purpose of committing a larceny," or, "with intent to commit a larceny," would not be sufficient, but the offense ought to be described by stating the facts necessary to constitute it. The descriptive words in the present indictment are, "with the intent to

feloniously take, steal and carry away the goods and·
chattels of J. H. Towles & Brother, then and there
to be had and found in said business house." These
words do describe the offense of larceny with every
particularity, except in the usual specification of the
· articles stolen. Such a specification is, of course, im-
possible where no larceny has been committed, and
the intent is to be gathered from the act of breaking
in and other circumstances. It cannot be known what
articles would have been taken if the felonious intent
had been carried out, and to require the indictment
to specify all the goods and chattels in the house,
·would be absurd. The description given is all that,
in the nature of the case, was possible. The same
conclusion has been reached in an unreported case, in
which the opinion was delivered by Judge Freeman.

The defendant was indicted in 1877, and the cause
continued until the January term, 1880, when a *nolle
prosequi* was entered and a new indictment found. After
the finding of the new indictment, the cause was con-
tinued by the defendant until the next term. When
the cause was called for trial at the next term, the
defendant again moved for a continuance, upon his
own affidavit that he could not go safely to trial for
want of the evidence of I. B. Hill. He expected to
prove by Hill that he had conducted the examination
of the witnesses before the committing magis'rate, and
that the two witnesses for the State, Towles and
Blackwell, by whom the identity of the defendant as
the guilty party would be established, had sworn on
that occasion that they at first thought that the per-

son seen by them to break into the store was one Frank White, then that he was one Jeff Lusk, and lastly, upon reflecting that Lusk was not in the State, that it must be the defendant. The affidavit further stated that Hill lived in Texas, but added that affiant was informed "that Hill would be at home this fall," and affiant could have the benefit of his testimony at the next term. The deposition of Hill had been taken by the defendant under the old indictment, and upon the presentation of the affidavit for a continuance, the attorney-general agreed that the deposition might be read on the trial. The court refused a continuance. The defendant then offered an additional affidavit, to the effect that he had caused subpœnas to be issued for all his witnesses, and supposed they had been executed, but was just informed by the deputy sheriff that three of these witnesses, naming them, could not be found, and that he expected to establish by them facts which he could not prove by any of the witnesses present. The facts he expected to prove were not stated. The circuit judge declined to consider this affidavit, upon the grounds that he had already acted on the motion.

After the panel had been made up, but before any of the jurors were drawn, the defendant proved by the clerk of the court that he had examined the files of papers where the deposition of Hill ought to be, but could not find it; that he had not searched his entire office, and could not say that the deposition was lost. The attorney-general then agreed that the contents of the deposition might be supplied or proved,

which the defendant, by his counsel, declined to do. The deposition was not offered on the trial, nor proof of its contents.

The house broken into was a country store. The entry was effected by first opening a cellar door on the outside of the building, and then, from the cellar, breaking the lock of a scuttle in the floor, and entering by the scuttle hole. It was noticed that the lock on the cellar door had been tampered with, and Oliver Towles and Boyd Blackwell were watching in the store on the night of the breaking. Blackwell had been examined before the committing magistrate, but was absent in Texas at the time of the trial. Towles was examined as a witness on the trial, and proved the entrance of some one into the cellar with a candle, the light of which he could see through the cracks of the floor, the breaking of the lock of the scuttle door, the opening of the hole, and the entry through it of the person with the lighted candle. He described this person as thrusting his head through the hole, then crawling into the store on his knees, and then straightening up on his feet, placing the candle on the counter before him, and looking around. The witness says he was lying on the counter about twelve feet from him, saw him distinctly, and knew him to be the defendant. Blackwell, he says, was lying behind him on a pallet. Witness had armed himself with an iron weight, which he threw at the housebreaker. The latter put out the light, jumped through the scuttle hole and escaped.

On cross-examination by the defendant's counsel,

and without objection, the witness details the conversation which took place between him and Blackwell immediately after the occurrence. Witness asked Blackwell who he thought it was. Blackwell said when his head first appeared through the scuttle hole he thought it was Frank White, then when he got through on his knees he thought it was Jeff Lusk, but when he straightened up on his feet and put the candle on the counter, he knew it was the defendant. Witness said to Blackwell he knew it was the defendant all the time. The witness was not asked whether he had testified before the committing magistrate what the defendant had stated in his affidavit he could prove by Hill, nor whether he had made admissions to the same effect on the morning after the occurrence. In other words, no foundation was laid for contradicting the witness by proof of statements at any time in conflict with his testimony on the trial. The committing magistrate was examined at the trial.

Upon the hearing of his motion for a new trial, the defendant filed another affidavit, in which, after referring to his affidavits for a continuance, he stated that he could prove by one of the witnesses mentioned in his additional affidavit for the continuance, who lived in Texas, that the State's witness, Towles, had admitted in conversation, on the morning after the house-breaking, that at first he thought the person was Frank White, then that it was Jeff Lusk, and lastly, upon reflection, that it was defendant. The defendant further stated in his affidavit that he could prove, by one Levisa Lawson, the making by the

witness Towles, on the morning after the occurrence, of similar admissions. He accompanied his affidavit by a statement of Lawson, purporting to be sworn to before a justice of the peace, to the effect mentioned, except that she reversed the order of the names of White and Lusk, putting Lusk's name first. The trial judge declined to notice the statement of Lawson, because not sworn to before the clerk of the court, and both her statement and that of the witness in Texas, because the facts stated would . not be evidence unless ground had been first laid for its introduction by asking the State's witness whether he had made such admissions.

Upon the facts thus disclosed by the record, the defendant asks this court to give him a new trial.

It has long been the settled rule of this court not to interfere with the discretionary action of the trial court in the matter of continuances, except in a clear case of the abuse of the discretion: *Rhea* v. *State,* 10 Yer., 258; *Goodman* v. *State,* Meigs, 195; *Nelson* v. *State,* 2 Swan, 482; *Sevier* v. *State,* Thomp. Cas., 192; *Garber* v. *State,* 4 Cold., 161. It is also settled, that if a continuance be refused upon an affidavit alleging sufficient grounds, but upon the trial it is made to appear that the affidavit was false, this court will not reverse: *Porter* v. *State,* 3 Lea, 496.

At the January term, 1880, when the present indictment was found, there was technically a new case, but in reality the same case which had been previously pending. This fact only appears by a recital . of the trial judge entered on the minutes, and ought

perhaps to have been shown by the records. The point is not material, for every prosecution stands for trial at the term at which the bill is found: *State* v. *Evans*, 1 Tenn., 211; *Sevier* v *State*, Thomp. Cas., 192. The defendant continued the case until the next term, and should have taken the proper steps to be then ready for trial. Persons accused of crime must be held to the exercise of reasonable diligence in the preparation of their defense, for, otherwise, the guilty might escape punishment: *Garber* v. *State*, 4 Cold., 164. An affidavit for a continuance, even at the first term, must show that efforts have been made by the accused for his trial: *State* v. *Evans*, 1 Tenn., 211. Unless the continuance be given by statute, as, before the act of 1875, ch. 6, was allowed by the Code, sec. 5208, upon an affidavit of too great excitement to the defendant's prejudice. At the second term, the affidavit must disclose the facts to be proved, as well as the names of the persons by whom they are expected to be proved: *Nelson* v. *State*, 2 Swan, 482.

The additional affidavit offered upon the application for a continuance was, perhaps, properly rejected for the reason given by the trial judge: *State* v. *Evans*, 1 Tenn., 211. It was clearly insufficient, because it failed to disclose the facts to be proved. The application rested, therefore, upon the defendant's affidavit of what he expected to prove by Hill. The affidavit is so worded as to leave it doubtful whether Hill was a resident of Texas or of this State. If of the former, the defendant was guilty of negligence in not obtaining an order at the first term to take his deposition.

If of this State, the affidavit should have shown the issuance of a subpœna, or, at any rate, that he had been all the time, after indictment found, out of the State. If he expected to be permitted to use the deposition of Hill already taken, he should have stated the fact.

If, however, we could see that defendant was seriously prejudiced by the absence of the testimony, the application for a new trial might deserve more favor. But it appears from the direct evidence, and from the failure on the trial to develop the defense shadowed in the affidavits, either by the introduction of witnesses who were present at the examination before the committing magistrate, or by cross-questioning the witness himself, that the defense had no real foundation as to the witness Towles. For the same reason, the proposed evidence brought forward on the application for a new trial below is without merit, as well as inadmissible for the reasons given by the circuit judge. The defendant's counsel has called attention to some objections to evidence made on the trial, but without pointing out any error in the rulings upon them, and we have not discovered any.

Affirm the judgment.